UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | No. 25-MJ-107 |
| | ) | |
| **DALONTE HARRISON** | ) | |
| | ) | |

## MOTION FOR RECONSIDERATION AND MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE

Dalonte Harrison, through the undersigned attorney, respectfully requests that this Court release him on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987). Section 3142(b) states that the Court "shall order the pretrial release of [Mr. Harrison] on personal recognizance . . . unless" there are absolutely no conditions of release that would ensure Mr. Harrison's appearance at court and the safety of the community. It is the government's burden to show either (1) by a preponderance of the evidence that Mr. Harrison is a risk of flight or (2) by clear and convincing evidence that no conditions can ensure the safety of the community. The government has not and cannot meet that burden. Mr. Harrison has strong ties to Washington, D.C., a limited and non-violent criminal history, and a family who rely on him and are able to support him during his release. Mr. Harrison asks the Court to find that there are conditions that will reasonably ensure his appearance and ensure the safety of the community and to release him.

I.  **Background**

Mr. Harrison was arrested on June 15, 2025. He was originally charged in Superior Court where an initial appearance, preliminary hearing, and initial detention hearing were held. An additional hearing, where defense counsel intended to again request release with the associate

judge was scheduled to be held on June 26, 2025. Prior to that hearing an indictment was filed in this court. On June 24, 2025, Mr. Harrison appeared before Magistrate Judge Faruqui for an initial appearance and a detention hearing was set for June 26, 2025 at 1:00 p.m. Mr. Harrison was held following that hearing.

## II. Legal Standard

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id*. at 1405.

It is the government's burden to demonstrate either by a preponderance of the evidence that the defendant is more likely than not to flee, or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.). Under the Bail Reform Act, the Court must consider the following factors when determining whether the

government has presented sufficient evidence that Mr. Harrison be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged. and (4) the nature and seriousness of the danger posed by the person to any person in the community if he is released.  18 U.S.C. § 3142(g).

### III. The Government Cannot Meet Its Burden to Demonstrate that Mr. Harrison is a Danger to the Community.

The D.C. Circuit reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community:

> The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that *an arrestee presents an identified and articulable threat to an individual or the community*, . . . a court may disable the arrestee from executing that threat Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community.

*United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. at 751) (emphasis added); *see also United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that the defendant must pose an actual danger to community, not that the defendant in theory posed a danger to the community).  The government cannot meet its burden here and Mr. Harrison should be released.  The Bail Reform Act factors demonstrate that there are conditions or combinations of conditions that can reasonably assure Mr. Harrison's appearance at trial and protect the public.

   *A.*  *The Nature and Circumstances of the Offense*

The Indictment charges Mr. Harrison with unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g).  There is no evidence that Mr. Harrison used or brandished the firearm.  The mere allegations that Mr. Harrison possessed a firearm are not sufficient clear and

convincing evidence that should justify his detention or prove him a danger to the community. In fact, individuals charged with firearms offenses have been repeatedly released in this District, including in cases (unlike here) where the defendant allegedly fled from police and discarded the firearm. *See, e.g., United States v. Abass*, No. 25-cr-79 (defendant allegedly fled and tossed firearm; drugs found in search of his person); *United States v. Gaskins/Gaines*, No. 25-cr-39 (both defendants released; both alleged to have fled and tossed firearms); *United States v. Belton*, No. 25-mj-51 (defendant charged with 924(c) and possession with intent to distribute); *United States v. Robinson*, No. 24-cr-95 (defendant fled from police; on probation at the time of arrest); *United States v. Yates*, No. 24-cr-89 (defendant charged with 924(c) and possession with intent to distribute cocaine; alleged machinegun switch); *United States v. Griffith*, No. 24-cr-56 (defendant fled from police); *United States v. Wiggins*, No. 23-cr-109 (defendant fled from policed and tossed firearm; firearm fitted with a "giggle switch"); *United States v. Jones*, No. 23-cr-154 (defendant fled from police; case later dismissed after suppression hearing); *United States v. Hicks*, No. 19-cr-288 (firearm allegedly tossed).

Judge Bates recently upheld a release decision in a firearms case and specifically noted that the possession of a firearm alone does not justify detention.

> The nature and circumstances of the offense charged do not strongly show that Bryant is a flight risk or a danger the community. While § 922(g)(1) involves firearms, courts have recognized that it is not a crime of violence under the BRA. *See generally, e.g., United States v. Gloster*, 969 F. Supp. 92 (D.D.C. 1997). Additionally, the government alleges only that Bryant possessed—not that he used—the firearm at issue. The Court acknowledges the inherent danger that a loaded firearm presents but finds that the allegations here do not weigh heavily in favor of pretrial detention.

*United States v. Bryant*, No. 25-cr-97, ECF No. 15 at 2. The nature and circumstances of the case do not require detention in this case.

The government spent much of its argument in previous detention hearings in this matter discussing the nature and circumstances of the offense and discussing statistics about firearm

possession and auto-sear devices. But a decision about whether to release Mr. Harrison should only be based on information related to Mr. Harrison. Mr. Harrison cannot be detained based on general statistics about gun possession in the community. If possession was enough, gun cases would have a presumption of detention under the Bail Reform Act. They do not.

B.    *The Weight of the Evidence*

The weight of the evidence is just one factor and it should be considered against the presumption of innocence. Because Mr. Harrison is innocent until proven guilty, we need to be cautious regarding how much consideration the weight of the evidence should weigh against that important constitutional protection. "Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing test]." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018). The weight of the evidence is not clear and convincing evidence of danger to support detention.

C.    *The History and Characteristics of Mr. Harrison*

Mr. Harrison's history and characteristics demonstrate that there are conditions of release that can both reasonably assure his appearance in court and protect the community. Mr. Harrison has significant ties to the community. He's 32 years old and lived in the DC area his entire life. His family is very involved in life and have been very present throughout this case, including his mother, grandmothers, and niece, who have all submitted letters in support of Mr. Harrison's release. *See* Ex. A, Family Letters in Support. Mr. Harrison has a strong network of family support in the DMV, and serves as a devoted parent and partner. He lives with his fiancé and 9-year-old son. His fiancé is currently 4 months pregnant and describes how grateful she is to have him around and how much she respects "all his grit and determination to help support our family." *See* Ex. B, Letter from Rai Mitchell.

Mr. Harrison is also a supportive uncle and grandson. His thirteen-year-old niece, Harlem

Harrison, writes, "growing up my dad wasn't around but Tae [Mr. Harrison] was like a father figure to me." *See* Ex. A, Letter from Harlem Harrison.  Mr. Harrison also helps his grandmother, Jackie Ball, with her diabetes, arthritis, and lumbar injury.  *See* Ex. A, Letter from Jackie Ball. She writes, "He does everything he can do to keep the house running . He cooks for us, empties the trash, washes our dishes, and even lifts me up the steps when I can't use them." *Id.*

Prior to his arrest in this case, Mr. Harrison also completed the Pathways Program, a comprehensive 16-week initiative facilitated by the Office of Neighborhood Safety and Engagement. During this program, Mr. Harrison earned employment opportunities and obtained IT certifications, and is currently working with the program to find ongoing employment. Through the Pathways Program, Mr. Harrison connected with Cure the Streets and continues to be involved today.  Mr. Harrison has the support of his supervisor at Cure the Streets, Mr. Rodriguez Norman.  Mr. Norman writes that during his time with the Pathways Program, Mr. Harrison demonstrated "both personal growth and a sincere commitment to improving his life and the well-being of this community."  *See* Ex. C, Letter from Rodriguez Norman.  As part of the Pathways Program, Mr. Harrison has participated in job readiness training, mental health support, Cognitive Behavioral Therapy, and professional development.  *Id.*  Mr. Norman writes, "Mr. Harrison not only fulfilled all program requirements but excelled." *Id.*  Mr. Norman also describes Mr. Harrison's commitment to Cure the Streets initiatives, including his work canvassing, setting up and breaking down community events, and mediating conflicts involving high-risk youth.  *Id.*  Mr. Norman characterizes Mr. Harrison's work with the program as "instrumental in promoting peace and community engagement in areas that need it most." *Id.*

Overall, Mr. Harrison has robust family ties, a strong support network, and a demonstrated commitment to promoting peace in his community.  He plays a critical role in

supporting his children, fiancé, niece, and grandmother. Mr. Harrison has strong ties to the district which indicate that he will remain here during his court proceedings. Additionally, while the charges against him are serious, the allegations do not involved any assaultive or violent conduct towards any member of our community.

Mr. Harrison's very minimal and old criminal history also supports release in this case. His most recent conviction is for conduct that occurred over eleven years ago. In previous hearings, the government has tried to argue that Mr. Harrison will fail to appear if released in this case because he missed a few court appearances in a citation matter over a decade ago. What the government ignores is that during the most recent opportunity Mr. Harrison had to comply with pretrial conditions, he excelled. He was charged in a case in Superior Court in 2017 and was released. His case was pending from March 2017 to June 2022, when it was dismissed by the government, and he was on release. His release was not revoked. The government points to Mr. Harrison missing a few court dates over a decade ago, when he was a child, instead of appreciating that the best evidence of how Mr. Harrison would behave on pretrial release today are the more recent five years of supervised release in which he complied with the conditions set by the Court.

Additionally, Mr. Harrison is seeking release under much more stringent conditions than he was under as part of his probation, specifically high intensity supervision. Mr. Harrison has no violent past offenses and his criminal history does not demonstrate that he is a current danger or risk of flight, which is what the government must establish to justify detention. Mr. Harrison's history and characteristics do not provide clear and convincing evidence to support his pretrial detention.

    D.    *The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Harrison's Release*

The government has not and cannot provide clear and convincing evidence to support a

finding that Mr. Harrison would be a danger to the community if released. First, the dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender of the crime. *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring). "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety." *Id*. The government has not and cannot provide specific evidence to support a finding that Mr. Harrison currently poses an unmitigable threat to public safety. Instead, the government again relies on the allegations in this case - possession of a firearm. However, these arguments alone do not demonstrate clear and convincing evidence that Mr. Harrison is presently a danger to the community. Instead, that safety can be assured by stringent conditions of release.

  E. *Past Similar Cases That Resulted in Pre-trial Release*

While the Court cannot and should not require that counsel provide an example of a similarly situation person who was released in the past to justify release, especially in a case where there is a presumption of release like this one, magistrate and district judges in this jurisdiction have released individuals in the recent past with similar charges and circumstances.

First, in *United States v. Joseph Robinson*, No. 24-cr-95 (TSC), Mr. Robinson was alleged to have fled from the police after throwing a loaded gun, was on probation for Assault with a Deadly Weapon, and drugs were also found in his vehicle. Mr. Robinson was released.

Second, in *United States v. Paul Mickens*, No. 25-cr-048 (AHA), Mr. Mickens was released even though he had a parole detainer because he was under supervision. Mr. Mickens was also accused of running from police and had three prior convictions.

**IV.** **Statistics Showing that It Is Extremely Rare for Defendants on Bond to Flee or Recidivate Demonstrate and that Mr. Harrison Does Not Pose A Serious Risk of Flight or Danger to the Community.**

In this case, this Court should be guided by Administrative Office of the Courts statistics

showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and 98% did not commit new crimes on bond.[1] Significantly, this near-perfect compliance rate is equally evident in federal districts with very high release rates and those with very low release rates.[2] Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[3] The below chart reflects this data:



---

[1] AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*,

No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4- AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[2] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019. *See* AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42. The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15. The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee,
S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina,
C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands. *See* AO Table H-14A.

*See* AO Table H-15; AO Table H-14A.

### V. Mr. Harrison Must Be Released Because There Are Conditions That Will Reasonably Assure Appearance and Safety.

Mr. Harrison must be released because there are conditions that will reasonably assure the safety of the community and Mr. Harrison's appearance in court. A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (quoting 18 U.S.C. § 3142(e)). Here, the government cannot carry its high burden of proving by clear and convincing evidence that there are no release conditions that will reasonably assure the safety of the community. *See id.* at 708 n.8. The government also cannot prove by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Harrison's appearance in court. Thus, Mr. Harrison should be released.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Harrison's appearance in court and the safety of the community.

- High Intensity Supervision Program;
- Maintain or actively seek employment, *id.* § 3142(c)(1)(B)(ii);
- Report on a "regular basis" to PTS or some other agency, *id.* § 3142(c)(1)(B)(vi);
- Comply with a curfew, *id.* § 3142(c)(1)(B)(vii);
- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id.* § 3142(c)(1)(B)(viii);
- Refrain from "excessive use of alcohol," *id.* § 3142(c)(1)(B)(ix); and
- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id.* § 3142(c)(1)(B)(ix).

Because there are conditions of release that will reasonably assure Mr. Harrison's appearance in court and the safety of the community, he should be released.

**I.** Conclusion

For the foregoing reasons, Mr. Harrison respectfully requests that this Court release him with conditions.

        Respectfully submitted,

        <u>/s/ Kevann Gardner</u>
        Kevann Gardner
        K Gardner Law PLLC
        1100 New Jersey Ave. SE
        Washington, DC
        202.409.5044
        kgardner@kgardnerlaw.com

        <u>/s/ Bernadette Armand</u>
        Bernadette Armand
        Bernadette Armand Law PLLC
        400 5th Street NW Suite 350
        Washington, D.C. 20001


        Attorneys for Defendant Dalonte Harrison

        Dated: July 7, 2025

12